552 So.2d 39 (1989)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jonathan Paul WILLIS, Defendant-Appellant.
No. CR 89-232.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
*40 Alfred F. Boustany, II, Lafayette, for defendant-appellant.
Richard Weimer, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before YELVERTON, KNOLL and KING, JJ.
KNOLL, Judge.
Defendant, Jonathan Paul Willis, was indicted by a Lafayette Parish grand jury for second-degree murder, a violation of LSA-R.S. 14:30.1. By a 10 to 2 vote, a jury found defendant guilty as charged. Subsequently, the trial court sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. Defendant seeks review of his conviction and sentence, urging six assignments of error.

FACTS
In the early afternoon of January 12, 1988, defendant and a friend, Christopher Scott, were riding bicycles on North Richter Street in Lafayette. As the pair rode past Zachary Thomas' home, Thomas stopped defendant. Thomas and two companions, Gilbert Williams and Harold Thibeaux, confronted defendant and accused *41 him of stealing a pit bulldog which was in Thomas' care. After denying responsibility, defendant allegedly dismounted his bicycle, removed his shirt, and challenged Thomas to a fight. Thomas, insisting on the return of the dog, informed defendant that he did not wish to fight. Defendant then picked up a bottle from the side of the street, threw it at Thomas, and fled on foot, leaving his bicycle on the roadway. Thomas took the bicycle and parked it under the carport of his home.
Approximately thirty minutes later, defendant returned, inquiring whether Thomas would surrender the bicycle. Thomas' companions, who were seated on the front porch, informed Thomas, who was inside the residence, that defendant had returned. Thomas reportedly responded by asking whether defendant had returned with the dog. When one of Thomas' companions saw that defendant had a gun wrapped in a shirt, he went inside the residence to inform Thomas that defendant was armed. As Thomas, who disregarded the warning, stepped from the front door of his house, defendant discharged the hand gun from the edge of the carport. A single gunshot struck Thomas' chest. Thomas retreated into the house and died a short time later as a result of the wound. Defendant left the scene with the bicycle and, after discussing the events with his father, who lived in the vicinity, defendant contacted the police, surrendered, and assisted the officers in locating his friend, Christopher Scott, who had fled.
At trial defendant testified that Thomas was armed with a crowbar at the initial confrontation in the street, and that he threw the bottle at Thomas in self-defense. According to defendant, he had borrowed the bicycle from a neighbor and he returned to Thomas' home with a gun to intimidate Thomas into returning the bicycle. Defendant contended that he did not intend to shoot Thomas. Defendant testified that when Thomas went back into the house, defendant took this opportunity to retrieve the bicycle. As defendant was attempting to leave the carport area, defendant testified that Thomas confronted him with the crowbar. As defendant retreated, he contended that he fell over the bicycle and the gun discharged. The State's witnesses uniformly denied that Thomas threatened defendant or that a crowbar was present at either confrontation.

BATSON CHALLENGE
Defendant, a black man, contends that the trial court erroneously rejected defense counsel's objections to the State's exercise of five (5) peremptory challenges to systematically exclude blacks from serving on the jury. Defendant argues that the State used subjective explanations which were unquantifiable to justify its juror challenges. Thus, he contends that the State's explanations leave nothing for appellate review other than a prosecutorial assurance of good faith.
In State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, ___ U.S. ___, 109 S.Ct. 180, 102 L.Ed.2d 149, the Louisiana Supreme Court stated:
"The United States Supreme Court recently reexamined the evidentiary burden placed on a criminal defendant who claims that he has been denied equal protection through the state's exercise of peremptory challenges against members of his race. Formerly, the Swain [v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ] standard placed the burden on the defendant to prove that the state had systematically excluded blacks from juries over a period of time. State v. Williams, 445 So.2d 1171 (La. 1984). The Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) rejected this standard as a `crippling burden' and held that a defendant could establish a prima facie case of purposeful discrimination on evidence adduced solely from the state's exercise of peremptory challenges at his trial ... To establish a prima facie case under Batson, the defendant must show that he is a member of a cognizable racial group and that the state has exercised peremptory challenges to remove members of his race from the petit jury. In addition, all relevant circumstances may be considered to determine whether *42 the defendant has made the requisite showing. In this regard, the Court stated:
For example, a `pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Batson, 106 S.Ct. at 1723. Once the defendant makes this showing, the burden shifts to the state `to come forward with a neutral explanation for challenging black jurors.' Batson, 106 S.Ct. at 1723. A prosecutor may not rebut the defendant's prima facie case by merely stating that a potential juror would be partial to the defendant because of their shared race. The Court, however, `emphasize[d] that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.' Batson, 106 S.Ct. at 1723. Finally, the ultimate burden of persuasion is on the defendant."
During jury selection in the case sub judice, the State exercised nine peremptory challenges to excuse blacks. On the other hand the State accepted four blacks. Two of the blacks accepted by the State were challenged by the defense, one was seated on the jury, and the other was seated as an alternate. In explanation of its challenges, the State expressed an intended strategy to seat jurors with "some degree of education" because of the complexity of the case. The first challenged juror did not complete high school, had a sister working as a dispatcher with the police department, and gave answers which did not impress the State. With regard to the second challenged black, the State's only explanation was his failure to complete high school and the State's dissatisfaction with his responses during voir dire examination. The record further indicates that this juror's brother had previously been convicted of a felony offense. The third black challenged peremptorily was excused because her manner of answering was meek and this gave the State a "bad feeling". The State's rationale for excusing the fourth black was his limited eighth grade education, and his apparent inability to understand questions during voir dire. The fifth black excused peremptorily by the State was rejected because of inattentiveness and paying attention to defendant during the State's questioning. The State further indicated that the two final jurors might be inattentive or unable to understand the proceedings.
The record in this case does not reflect that the State challenged jurors of defendant's race on the assumption or intuitive judgment that they would be partial to defendant because of their shared race. As indicated hereinabove, although only one black served on the trial jury, a second was accepted as an alternate, and two other blacks were chosen by the State, but challenged by defense counsel.
The State's articulation of the subjective factors of meekness and inattentiveness point out the difficulty that Justice Marshall addressed in his concurring opinion in Batson that trial courts face in assessing the State's motives in challenging potential jurors. Nevertheless, acknowledging the deference recognized in Batson given to the trial court's determination of whether purposeful discrimination has been established, we cannot say that under the facts presented in the case sub judice that the trial court erred in denying defendant's motions for a mistrial or for a new jury venire.
Therefore, this assignment of error is without merit.

CHALLENGE FOR CAUSE
Defendant contends that the trial court erred in denying his challenge for cause of a potential juror who made a statement *43 during voir dire that an individual in possession of a firearm outside his home is "probably looking for trouble".
Before reaching defendant's contention, we must first resolve a problem presented by the failure of the court reporter to transcribe the section of testimony containing the juror's response complained of herein. Because of this problem, defendant requests that we order a full transcript or production of the tape recordings which form the basis for the transcript.
LSA-C.Cr.P. Art. 843 provides:
"In felony cases ... the state, or the defendant in misdemeanor cases tried in a district, parish, or city court, the clerk or court stenographer shall record all of the proceedings, including the examination of prospective jurors, the testimony of witnesses, statements, rulings, orders, and charges by the court, and objections, questions, statements, and arguments of counsel."
The intent of LSA-C.Cr.P. Art. 843 is to effectuate the constitutional guarantee of an appeal in felony cases by making a full record available to support the errors assigned. State v. Ford, 338 So.2d 107 (La.1976). An inconsequential omission from a record which is immaterial to a proper determination of the appeal does not require the reversal of a conviction. Id. at 110.
In the case sub judice, defendant designated the entire voir dire as part of the record. After carefully reviewing the record, we find that although the comment by the challenged juror concerning persons carrying firearms outside the home is not contained in the transcript, the trial court's attempt to rehabilitate is part of the record. For reasons which follow, we chose not to order the production of the tape recordings or a full transcript, and resolve this issue by assuming for purposes of argument that defendant's representations are true. In this manner, we effectuate defendant's right to a full appellate review.
A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. State v. Jones, 474 So.2d 919 (La.1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986). A charge of juror bias may be removed if the prospective juror is rehabilitated. State v. Gibson, 505 So.2d 237 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 66 (La. 1987). Moreover, the trial court has wide discretion in ruling on a challenge for cause, and its ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Gintz, 438 So.2d 1230 (La.App. 3rd Cir.1983).
The trial court utilized a three tiered method of voir dire examination. Initially, the trial court questioned the prospective panel concerning general legal principles, and then querried them about their personal backgrounds. The State and defense counsel were then allowed to conduct voir dire of the prospective jurors individually and collectively.
The juror at issue, James Young, was one of the first prospective jurors examined. The record discloses no negative responses by Mr. Young when the trial court questioned the jurors collectively about whether they could accept and apply the law, and whether they had any problems with the presumption of innocence of the defendant and the State's burden of proof. After Mr. Young provided personal information to counsel individually, defense counsel asked the entire venire whether they understood that an accused could admit killing the victim, yet be innocent of a crime. After a juror expressed confusion over this concept, the venire was asked whether they could put aside sympathy for the victim and judge the case on the facts presented. All prospective jurors indicated that they could be fair and impartial. It is assumed that at this point Mr. Young commented that a person in possession of a firemarm outside his home is "probably looking for trouble". The trial court then instructed Mr. Young, stating:
"COURT: There's what we call justifiable homicide, and self defense. Self *44 defense is a defense against the charge of murder. In this case, I don't know what the circumstances are, but the State has the burden to prove beyond a reasonable doubt that he [defendant], in fact, shot and killed this other person and that it was not self defense. The State has to prove that so that you won't be left hanging up in the air as to what happened. If the State would prove that he did it and that it was not self defense, then you would have to render your verdict. You see, that defense applies not only to yourself, but in the defense of others if the circumstances show it. It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself. And when it is reasonably believed that such intervention is necessary to protect the other person. So, you can do it to defend yourself or to defend another. The State has to prove that is was not that. Does that leave any questions in your mind as to what your duty would be?
MR YOUNG: No, sir."
Even though Mr. Young's comment may have indicated potential bias, the trial judge's rehabilitation informed the prospective juror that defendant could not be convicted if the State failed to show that the act was not justified. We find that Mr. Young's response demonstrates that the trial court's instruction overcame any bias.
After carefully reviewing the voir dire examination, we find that the trial court did not abuse its discretion in rejecting a challenge for cause.
This assignment of error lacks merit.

SUFFICIENCY OF THE EVIDENCE
Defendant contends that the evidence presented is insufficient to support a guilty verdict to the charge of second-degree murder. Instead, defendant argues that the jury should have found him guilty of manslaughter, a responsive verdict.
The standard of review for the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
Defendant was charged with second-degree murder under the provisions of LSA-R.S. 14:30.1(1) which requires the State to prove he had the specific intent to kill or to inflict great bodily harm. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired to act. LSA-R.S. 14:10(1). Even though intent is a question of fact, due to the difficulty of presenting direct evidence as to the defendant's state of mind, the trier of fact may infer intent from the facts and circumstances of a transaction and the defendant's actions. LSA-R.S. 15:445. The existence of specific intent is an ultimate legal conclusion for the trier of fact to resolve. State v. Graham, 420 So.2d 1126 (La.1982).
Defendant argued to the jury and reurges here that, at best, the evidence shows he was guilty of manslaughter.
In State v. Lombard, 486 So.2d 106 (La. 1986), the Louisiana Supreme Court stated:
"Manslaughter is a homicide which would be either first or second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. La.R.S. 14:31(1). Thus, the presence of `sudden passion' or `heat of blood' distinguishes manslaughter from murder. The court has stated on several occasions, however, that `sudden passion' and `heat of blood' are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. Since they are mitigatory factors, a defendant who establishes by a preponderance of the evidence that he acted in a `sudden passion' or `heat of blood' is entitled to a manslaughter *45 verdict. Where such proof has been introduced, a second degree murder verdict is inappropriate." (Citations omitted; footnotes omitted.)
Defendant argued to the jury that he killed Thomas in the heat of blood, emphasizing the victim's accusations that defendant stole the dog, that the victim seized defendant's bicycle, and that the victim laughed at defendant.[1] The evidence established that although the State's witnesses verified that the victim initiated the initial confrontation and corroborated the other mitigating factors, the witnesses uniformly testified that approximately thirty minutes elapsed between the confrontation in the street and the ultimate shooting. Considering the evidence in a light most favorable to the prosecution, the jury could have found that defendant failed to establish by a preponderance of the evidence that his anger was sufficient to deprive an average person of his self control or that his blood or an average person's blood would not have cooled at the time he fired the handgun.
Therefore, this assignment of error is without merit.

SENTENCING
In defendant's next three assignments of error, he contends that the trial court erred in sentencing him to an excessive sentence because life imprisonment constitutes cruel and unusual punishment which violates his constitutional rights.
Defendant was convicted of second-degree murder. The penalty for second-degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. This is the sentence which defendant received.
Louisiana courts have consistently held that a mandatory sentence of life imprisonment for second-degree murder does not constitute cruel and unusual punishment. State v. Hereford, 518 So.2d 515 (La.App. 3rd Cir.1987), and cases cited therein.
Therefore, this assignment of error is without merit.

ERRORS PATENT REVIEW
Defendant requested this court to review the record for errors patent. We have carefully examined the record and find no such errors.
Therefore, this assignment of error lacks merit.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant also argued to the jury that he acted in self-defense when the victim attacked him with a crowbar. On appeal, defendant has not argued self-defense. Issues which are neither briefed nor argued are considered abandoned. State v. Dewey, 408 So.2d 1255 (La. 1982).