609 So.2d 1183 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Todd AUBREY, Defendant-Appellant.
No. CR92-351.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
*1184 Susan L. Theall, Lafayette, for defendant-appellant.
Morgan Goudeau, III, Dist. Atty., Opelousas, for plaintiff-appellee.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
Defendant, Todd Aubrey, appeals his convictions of simple kidnapping and forcible rape, asserting that the State used its peremptory challenges to exclude jurors solely on the basis of race in violation of his constitutional rights as set forth by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant also contends that the evidence is insufficient to support the convictions. We affirm.

FACTS
The victim, a white female, travelled with her parents, her fiancé, and approximately thirty-five others from the Houston, Texas area to attend the Crawfish Festival in Breaux Bridge, Louisiana. During the festivities, the victim became separated from the rest of her party and struck up a conversation with defendant, Todd Aubrey, and Eric Porter. She subsequently left with defendant and Porter in Porter's car to obtain beer. Both defendant and Porter are black males.
According to the victim, instead of obtaining beer, defendant and Porter took her to a field and forced her to engage in sexual intercourse and oral sex with each offender several times. They also allegedly took her jewelry and cash. Much later, the defendants dropped her off, half naked, in Lafayette where she called the local Sheriff's Office.
The defendants do not deny that they engaged in sexual intercourse and oral sex with the victim several times. However, they allege that all sexual activity between them was purely consensual.
The Grand Jury of St. Landry Parish charged Aubrey with aggravated rape in violation of LSA-R.S. 14:42, aggravated oral sexual battery in violation of LSA-R.S. 14:43.4, second-degree kidnapping in violation of LSA-R.S. 14:44.1 and simple robbery in violation of LSA-R.S. 14:65. Subsequently, the State moved to sever the counts of aggravated oral sexual battery and simple robbery. Defendant was tried on December 19, 1990, on the charges of aggravated rape and second-degree kidnapping. His trial before a twelve member jury in St. Landry Parish resulted in a mistrial due to the jury's failure to reach a verdict.
Subsequently, on January 22, 1991, the State filed an amended bill of information, and the Grand Jury amended its indictment on April 23, 1991, to include the co-defendant, Porter, charging both with aggravated rape and second-degree kidnapping. After a twelve member jury trial, both defendant and Aubrey were convicted of forcible rape in violation of LSA-R.S. 14.42.1, and simple kidnapping in violation of LSA-R.S. 14:45.
On September 6, 1991, the sentencing court sentenced defendant on the charge of forcible rape to 25 years hard labor of which 15 years is without probation, parole or suspension of sentence, with credit for time served; defendant further received 5 years hard labor for simple kidnapping to run concurrently with the forcible rape sentence. This appeal concerns only the defendant, Todd Aubrey, who solely appeals *1185 his conviction, relying on two assignments of error.

ABANDONMENT OF FIRST ASSIGNMENT OF ERROR
As his first assignment of error, defendant complains that we should reverse the jury's verdict because the State failed to prove beyond a reasonable doubt all essential elements of the crimes. This assignment was not briefed and is considered abandoned pursuant to the Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4.

RACIALLY BASED PEREMPTORY CHALLENGE
As his second assignment of error, defendant contends that the black members of the jury venire were systematically excluded by the State from selection as members of the jury based on race. Defendant's argument is based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
Before we turn to the merits of defendant's Batson objection, we will address the timeliness of his objection. Batson does not concern the procedure involved for a timely objection. In determining whether defendant's Batson objection was timely, we turn to our State law and jurisprudence.
In order to preserve the complaint that the prosecutor's use of a peremptory challenge was based on racial discrimination, defendant must have timely objected. LSA-C.Cr.P. Art. 841 mandates that defendant make a contemporaneous objection in order to raise a purported error in the selection of the jury. State v. Winn, 412 So.2d 1337 (La.1982); State v. Johnson, 452 So.2d 1302 (La.App. 3rd Cir.1984). Article 841(A) provides in part:
"A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."
Louisiana jurisprudence is clear that "[i]n order to preserve the complaint that the prosecutor's use of a peremptory exception was based on race, the defense must make an objection before the entire jury panel is sworn." State v. Williams, 524 So.2d 746 (La.1988). The ruling, and thus, the prerequisite Batson objection, must be made at a time when the trial court can correct any misuse of peremptory challenges. Id; See also, State v. Lamark, 584 So.2d 686 (La.App. 1st Cir.1991). Although our jurisprudence has indicated that Batson objections should at least be made "at some time before the completion of the jury panel," we find that in order to fulfill the purpose of that principle, a defendant must make a Batson objection contemporaneously with the State's exercise of the allegedly racially biased peremptory challenges. State v. Williams, supra. An objection made even before the entire jury panel is sworn and completed is untimely if the prospective jury has been chosen, individually sworn and dispensed to return at a subsequent date, and those against whom the State has allegedly misused its peremptory challenges have been dismissed completely. We find an objection raised untimely, as in the present case, does not allow the trial court the opportunity to correct any misuse of peremptory challenges. An objection made contemporaneously with the peremptory challenge would avoid a reversal.
A timely objection would allow a trial court to rule on a Batson objection in time for the trial court to correct the error by reinstating the improperly challenged jurors. Additionally, "[a]n obvious advantage of a prompt ruling on Batson objections is that memories are fresh and a better record can be made of such relevant factors as the race and the demeanor of the jurors, the neutral reasons for challenging the jurors...." State v. Williams, supra.
In the case sub judice, jury selection began on April 1, 1991, and the entire jury panel was selected the same day. After *1186 each juror was selected, they were told to return on April 25, 1991, when defendant's trial would resume. The jurors, although individually placed under oath, were not sworn together as provided by LSA-C.Cr.P. Art. 790, until April 25, 1991, when they returned to resume defendant's trial.
Defendant did not object to the State's exercise of peremptory challenges on April 1, 1991, when the entire jury panel was selected. In fact, no minute entry, objection within testimony, or written motion contesting the State's exercise of peremptory challenges is in the record before us. However, the trial court did hold a hearing on April 19, 1991, to determine the merits of defendant's motion for a mistrial based on his Batson objection. The court ruled on the motion, and we may now decide the correctness of his ruling. The trial court denied the motion as untimely. We agree with the trial court that defendant's Batson objection was untimely. We affirm the finding of the trial court that the Batson objection was untimely, as it was not made contemporaneously with the jury selection process.
Even if Aubrey had objected timely to the composition of the jury panel, we would find that his objection of racial bias lacks merit. Aubrey asserts that the State used peremptory challenges to systematically exclude all black male prospective jurors from serving on the jury without satisfactory racially neutral explanations for the challenges. Notably, the use of peremptory challenges based on gender is not prohibited. State v. Adams, 533 So.2d 1060 (La.App. 4th Cir.1988), writ denied, 540 So.2d 338 (La.1989).
In conformity with the United States Supreme Court decision in Batson, supra, and LSA-C.Cr.P. Art. 795(C), a peremptory challenge made by the State shall not be based solely upon the race of the juror. The defendant has the burden in a Batson claim to establish a prima facie showing of purposeful racial discrimination in selection of a jury. In order to prevail, the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant must show that the facts and any other relevant circumstances raise an inference that the prosecutor exercised peremptory challenges to exclude jurors on account of their race. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a racially neutral explanation for challenging the jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race. Batson, supra.
Defendant is a member of the racial group which he asserts the State has wrongfully exercised its peremptory challenges to exclude. The State exercised 21 of its 24 challenges, and the defense exercised all 24 challenges in the selection of the jury. In brief, defendant submits registration voter detail inquiries to establish the race of some of those both accepted and rejected as jurors on voir dire. These documents, however, are not properly in the record before us; therefore, we may not consider them. Benjamin v. First Horizon Ins. Co., 563 So.2d 1337 (La.App. 3rd Cir.1990).
Even if we could consider these documents, we note that they are incomplete, as they indicate the race of only 11 out of the 21 prospective jurors challenged peremptorily by the State. Even if we accepted defendant's unsupported allegations in his brief regarding the race of the jurors, we would find that defendant failed to establish a prima facie case of purposeful racial discrimination. Defendant states in brief that the jury panel encompassed four blacks and eight whites. Additionally, one alternate was black; the other was white.
The State proffered its notes taken during voir dire during the hearing on the motion for a mistrial. The actual notes are not before us on appeal. The State, however, read from the notes, and this testimony is transcribed for the record. The State did *1187 not note the race of the prospective jurors, in most instances did not indicate the gender of the prospective jurors, and gave the following racially neutral explanations for its challenges: Judy Semien, a single mother of one, indicated sexual casualness; Nolan White can not read and is a friend of the defendant's attorney's mother; Ronald Stelly has a ninth grade education and indicated that the defendants looked familiar; Christine Reed, a single twenty-four year old, is too young and seemed infatuated with the defendants; Marie Savoy seemed inattentive and uninterested in the proceedings; Gloria Robert had previously served on a rape case; Marvaer Richard was excused for cause; Mary Payne wore dark sunglasses in the court and indicated that the defense attorney was the attorney of her niece (actually, the record indicates that the defense attorney was her own attorney and her niece worked for him); Patsy Morgan may have been familiar with the defendants because she lived in the Carencro area; Janice Morris entered the court with curlers in her hair; Rose Milton is a single parent which indicated sexual casualness; Frances Mayfield's husband was convicted and imprisoned for drug distribution; Wanda Williams and Patsy Lewis know the defense attorney; Lisa Ledoux is single, young, and was making excessive eye contact with one of the defendants; Peter Thomas seemed too sympathetic with the defendants; Lucille Richard, Janice Pitre Vanwright, Louise Marcel, and Nancy Lloyd were excused because the prosecutor felt there were enough women on the jury at that stage of the proceedings; and, Louise Marcel additionally indicated that she knows the defense attorney. As to the last challenge exercised by the State, its 21st challenge, the record is void of any evidence as against whom the State exercised its challenge and why this juror was challenged.
We consider the above explanations sufficient race neutral reasons to justify a denial of a Batson claim. See, e.g., State v. Guillory, 544 So.2d 643 (La.App. 3rd Cir.1989), writ denied, 551 So.2d 1334 (La. 1989); State v. Willis, 552 So.2d 39 (La. App. 3rd Cir.1989), writ denied, 560 So.2d 20 (La.1990), reconsideration denied, 563 So.2d 894 (La.1990); State v. Brown, 507 So.2d 304 (La.App. 3rd Cir. 1987); State v. Williams, 545 So.2d 651 (La.App. 5th Cir. 1989), writs denied, 556 So.2d 53 (La.1990), 584 So.2d 1157 (La.1991). Additionally, according to defendant's position, the final composition of the jury included eight whites and four black jurors, which does not support an inference of discrimination. Finally, even if we accept the defendant's allegations of the racial composition of the jury as true, because the State accepted four black jurors and one black alternate juror without exhausting its peremptory challenges, the inference of discrimination is further refuted. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149, rehearing denied, 488 U.S. 976, 109 S.Ct. 517, 102 L.Ed.2d 551 (1988); State v. Otis, 586 So.2d 595 (La.App. 2nd Cir.1991).
After considering all relevant circumstances, we find that the defendant's second assignment of error lacks merit because he failed to timely object, and in arguendo, he failed to establish a prima facie case of purposeful exclusion by the State of black jurors from the petit jury.
For the foregoing reasons, defendant's conviction is affirmed.
AFFIRMED.