615 So.2d 507 (1993)
STATE of Louisiana
v.
Eric Dwayne PORTER.
No. CR92-850.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
Rehearing Denied March 26, 1993.
*508 Morgan J. Goudeau III, Opelousas, for State of LA.
Thomas E. Guilbeau, Lafayette, for Eric Dwayne Porter.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
DOMENGEAUX, Chief Judge.
The defendant, Eric Dwayne Porter, was convicted of forcible rape, a violation of La.R.S. 14:42.1, and simple kidnapping, a violation of La.R.S. 14:45. On the rape conviction, defendant was sentenced to 21 years at hard labor, seven of which are without benefit of parole, probation or suspension of sentence, and on the kidnapping conviction, defendant was sentenced to five years at hard labor, the two sentences to run concurrently. Defendant appeals his conviction and sentence, raising questions pertaining to jury selection, sentencing, the verdict form, and sufficiency of the evidence.

FACTS
The victim, a white female, along with her parents, fiancé, and 35 other people from the Houston area, attended the Crawfish Festival in Breaux Bridge, Louisiana in 1990. During the festivities, the victim became separated from the rest of her party when she went off to investigate the landing of a helicopter near the festival grounds. There, the victim struck up a conversation with the defendant, Eric Porter, and his codefendant, Todd Aubrey. Both defendants are black males. After approximately 15 minutes of conversation, the defendants told the victim that they were going to a store to buy beer and asked her if she wanted to go with them. She agreed to go with them in Porter's car. Once in the car, they passed several stores and continued driving through back road areas until it became dark. At that time, the victim began to feel uncomfortable and asked to be taken back to the festival. The defendants refused, and instead, they took her to a field located in St. Landry Parish and forced her to engage in vaginal intercourse and oral sex.
*509 These activities continued for some time, both in the field and in the car, until the victim pleaded with the defendants to stop. They dropped her off at a unspecified location in Lafayette Parish, keeping with them her jewelry and some of her clothes. The victim then ran to a nearby house and reported the offense.
Defendant has not denied that he engaged in sexual activities with the victim. Rather, the defense of consent was urged at trial by his counsel and counsel for Todd Aubrey. Aubrey appealed his conviction and an opinion by this court was rendered on December 9, 1992, affirming the conviction. See State v. Aubrey, 609 So.2d 1183 (La.App. 3d Cir.1992).

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant contends the trial court erred in conducting voir dire proceedings 24 days in advance of trial, and then did not question the jurors on the day of trial to determine if prejudicial knowledge about the case was gained in the interim.
Trial was held in St. Landry Parish, which jurisdiction utilizes the central jury pool authorized in La.C.Cr.P. Art. 409.3, as well as its own local rules. The jury was selected on April 1, 1991, for a trial scheduled and conducted on April 25, 1991. During this interim period, on April 19, 1991, a hearing was conducted on defendant's motion for a mistrial and change of venue based on possible bias caused by pretrial publicity. Defendant's motions were denied.
On appeal, defendant argues that the failure of the trial judge to requestion the jury on the morning of trial prejudiced him because the 24 day interim period allowed for the possibility of jury contamination. However, defense counsel did not object to the court's failure to requestion members of the jury about possible contamination and did not request a polling of the jury on this specific subject. According to La.C.Cr.P. Art. 841, an irregularity or error at trial cannot be availed of after verdict unless the party makes known his objection and the grounds for it. Accordingly, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 7
Defendant contends the trial court erred in failing to use a random selection method in the impaneling and selection of the jury, and in permitting juror Elizabeth Guillory, who lacked residency qualifications, to be seated as an alternate when the selection of the 12 person jury had not yet been completed.
According to La.C.Cr.P. Art. 532, the proper method to allege that the general venire or petit jury venire was improperly drawn, selected, or constituted is through a motion to quash. In the present case, the defendant filed no motion to quash. In fact, the record contains nothing pertaining to these assignments of error except for questioning by defense counsel of juror Elizabeth Guillory about her residency, and no other action was taken by defense counsel on this issue.
La.C.Cr.P. Art. 535, provides that when a motion to quash is not urged prior to trial, any objection to the jury venire is waived. For this reason, these assignments of error have no merit.

ASSIGNMENTS OF ERROR NOS. 3 AND 4
Defendant next contends the jury did not represent a fair cross section of the community, and the prosecution used its peremptory challenges in such a way as to systematically exclude members of the black race from the jury.
In brief, defendant argues that a jury comprised of eleven women and one man in a case involving an alleged rape does not represent a fair cross section of the community. First, defendant did not comply with the requirement of La.C.Cr.P. Art. 841 by making an appropriate objection to the jury composition at the time of selection. Second, defendant's reliance on Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), for the proposition that a jury's representative function *510 requires that it be selected from a "fair cross section of the community," is misplaced. The Taylor case involved the systematic exclusion of women from jury venires, which was found to be unconstitutional. But the court pointed out that defendants are not entitled to a jury of any particular composition. Accordingly, claims of gender discrimination are reviewed, but have been found to be without merit in State v. Adams, 533 So.2d 1060 (La.App. 4th Cir.1988), writ denied, 540 So.2d 338 (La.1989), State v. Morgan, 553 So.2d 1012 (La.App. 4th Cir.1989), writ denied, 558 So.2d 600 (La.1990), and State v. Collins, 588 So.2d 766 (La.App. 4th Cir.1991). In the case before us, the voir dire transcript does not reflect any impropriety in the ultimate selection of 11 women to serve on this jury. Further, the defendant does not suggest any factual basis supporting such a finding by this court.
Defendant also argues that there was a systematic exclusion of blacks from the jury. This argument was previously addressed by this court in the appeal of defendant's codefendant, Todd Aubrey. There, we held that the defendant's objection based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was both untimely and invalid. As the present question is identical to the issue thoroughly considered in State v. Aubrey, supra, an excerpt from this court's opinion is set forth below:
"Before we turn to the merits of defendant's Batson objection, we will address the timeliness of his objection. Batson does not concern the procedure involved for a timely objection. In determining whether defendant's Batson objection was timely, we turn to our State law and jurisprudence.
"In order to preserve the complaint that the prosecutor's use of a peremptory challenge was based on racial discrimination, defendant must have timely objected. LSA-C.Cr.P. Art. 841 mandates that defendant make a contemporaneous objection in order to raise a purported error in the selection of the jury. State v. Winn, 412 So.2d 1337 (La.1982); State v. Johnson, 452 So.2d 1302 (La.App. 3rd Cir.1984). Article 841(A) provides in part:
"A. An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.... It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor."
"Louisiana jurisprudence is clear that "[i]n order to preserve the complaint that the prosecutor's use of a peremptory exception was based on race, the defense must make an objection before the entire jury panel is sworn." State v. Williams, 524 So.2d 746 (La.1988). The ruling, and thus, the prerequisite Batson objection, must be made at a time when the trial court can correct any misuse of peremptory challenges. Id; See also, State v. Lamark, 584 So.2d 686 (La.App. 1st Cir.1991). Although our jurisprudence has indicated that Batson objections should at least be made "at some time before the completion of the jury panel," we find that in order to fulfill the purpose of that principle, a defendant must make a Batson objection contemporaneously with the State's exercise of the allegedly racially biased peremptory challenges. State v. Williams, supra. An objection made even before the entire jury panel is sworn and completed is untimely if the prospective jury has been chosen, individually sworn and dispensed to return at a subsequent date, and those against whom the State has allegedly misused its peremptory challenges have been dismissed completely. We find an objection raised untimely, as in the present case, does not allow the trial court the opportunity to correct any misuse of peremptory challenges. An objection made contemporaneously with the peremptory challenge would avoid a reversal.
"A timely objection would allow a trial court to rule on a Batson objection in time for the trial court to correct the error by reinstating the improperly challenged *511 jurors. Additionally, "[a]n obvious advantage of a prompt ruling on Batson objections is that memories are fresh and a better record can be made of such relevant factors as the race and the demeanor of the jurors, the neutral reasons for challenging the jurors...." State v. Williams, supra.
"In the case sub judice, jury selection began on April 1, 1991, and the entire jury panel was selected the same day. After each juror was selected, they were told to return on April 25, 1991, when defendant's trial would resume. The jurors, although individually placed under oath, were not sworn together as provided by LSA-C.Cr.P. Art. 790, until April 25, 1991, when they returned to resume defendant's trial.
"Defendant did not object to the State's exercise of peremptory challenges on April 1, 1991, when the entire jury panel was selected. In fact, no minute entry, objection within testimony, or written motion contesting the State's exercise of peremptory challenges is in the record before us. However, the trial court did hold a hearing on April 19, 1991, to determine the merits of defendant's motion for a mistrial based on his Batson objection. The court ruled on the motion, and we may now decide the correctness of his ruling. The trial court denied the motion as untimely. We agree with the trial court that defendant's Batson objection was untimely. We affirm the finding of the trial court that the Batson objection was untimely, as it was not made contemporaneously with the jury selection process.
"Even if Aubrey had objected timely to the composition of the jury panel, we would find that his objection of racial bias lacks merit. Aubrey asserts that the State used peremptory challenges to systematically exclude all black male prospective jurors from serving on the jury without satisfactory racially neutral explanations for the challenges. Notably, the use of peremptory challenges based on gender is not prohibited. State v. Adams, 533 So.2d 1060 (La.App. 4th Cir.1988), writ denied, 540 So.2d 338 (La.1989).
"In conformity with the United States Supreme Court decision in Batson, supra, and LSA-C.Cr.P. Art. 795(C), a peremptory challenge made by the State shall not be based solely upon the race of the juror. The defendant has the burden in a Batson claim to establish a prima facie showing of purposeful racial discrimination in selection of a jury. In order to prevail, the defendant must first show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. The defendant must show that the facts and any other relevant circumstances raise an inference that the prosecutor exercised peremptory challenges to exclude jurors on account of their race. Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a racially neutral explanation for challenging the jurors. This explanation may be something less than justification of a challenge for cause, but must be something more than the prosecutor's assumption or intuition that the juror will be partial to the defendant because of their shared race. Batson, supra.
"Defendant is a member of the racial group which he asserts the State has wrongfully exercised its peremptory challenges to exclude. The State exercised 21 of its 24 challenges, and the defense exercised all 24 challenges in the selection of the jury. In brief, defendant submits registration voter detail inquiries to establish the race of some of those both accepted and rejected as jurors on voir dire. These documents, however, are not properly in the record before us; therefore, we may not consider them. Benjamin v. First Horizon Ins. Co., 563 So.2d 1337 (La.App. 3rd Cir.1990).
"Even if we could consider these documents, we note that they are incomplete, as they indicate the race of only 11 out of the 21 prospective jurors challenged peremptorily by the State. Even if we accepted *512 defendant's unsupported allegations in his brief regarding the race of the jurors, we would find that defendant failed to establish a prima facie case of purposeful racial discrimination. Defendant states in brief that the jury panel encompassed four blacks and eight whites. Additionally, one alternate was black; the other was white.
"The State proffered its notes taken during voir dire during the hearing on the motion for a mistrial. The actual notes are not before us on appeal. The State, however, read from the notes, and this testimony is transcribed for the record. The State did not note the race of the prospective jurors, in most instances did not indicate the gender of the prospective jurors, and gave the following racially neutral explanations for its challenges: Judy Semien, a single mother of one, indicated sexual casualness; Nolan White can not read and is a friend of the defendant's attorney's mother; Ronald Stelly has a ninth grade education and indicated that the defendants looked familiar; Christine Reed, a single twenty four year old, is too young and seemed infatuated with the defendants; Marie Savoy seemed inattentive and uninterested in the proceedings; Gloria Robert had previously served on a rape case; Marvaer Richard was excused for cause; Mary Payne wore dark sunglasses in the court and indicated that the defense attorney was the attorney of her niece (actually, the record indicates that the defense attorney was her own attorney and her niece worked for him); Patsy Morgan may have been familiar with the defendants because she lived in the Carencro area; Janice Morris entered the court with curlers in her hair; Rose Milton is a single parent which indicated sexual casualness; Frances Mayfield's husband was convicted and imprisoned for drug distribution; Wanda Williams and Patsy Lewis know the defense attorney; Lisa Ledoux is single, young, and was making excessive eye contact with one of the defendants; Peter Thomas seemed too sympathetic with the defendants; Lucille Richard, Janice Pitre Vanwright, Louise Marcel, and Nancy Lloyd were excused because the prosecutor felt there were enough women on the jury at that stage of the proceedings; and, Louise Marcel additionally indicated that she knows the defense attorney. As to the last challenge exercised by the State, its 21st challenge, the record is void of any evidence as against whom the State exercised its challenge and why this juror was challenged.
"We consider the above explanations sufficient race neutral reasons to justify a denial of a Batson claim. See, e.g., State v. Guillory, 544 So.2d 643 (La.App. 3rd Cir.1989), writ denied, 551 So.2d 1334 (La.1989); State v. Willis, 552 So.2d 39 (La.App. 3rd Cir.1989), writ denied, 560 So.2d 20 (La.1990), reconsideration denied, 563 So.2d 894 (La.1990); State v. Brown, 507 So.2d 304 (La.App. 3rd Cir.1987); State v. Williams, 545 So.2d 651 (La.App. 5th Cir.1989), writs denied, 556 So.2d 53 (La.1990), 584 So.2d 1157 (La.1991). Additionally, according to defendant's position, the final composition of the jury included eight whites and four black jurors, which does not support an inference of discrimination. Finally, even if we accept the defendant's allegations of the racial composition of the jury as true, because the State accepted four black jurors and one black alternate juror without exhausting its peremptory challenges, the inference of discrimination is further refuted. State v. Thompson, 516 So.2d 349 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, [102 L.Ed.2d 149] rehearing denied, 488 U.S. 976, 109 S.Ct. 517[, 102 L.Ed.2d 551] (1988); State v. Otis, 586 So.2d 595 (La.App. 2nd Cir.1991)."
In keeping with this court's decision in State v. Aubrey, supra, we find that defendant's Batson objection was both untimely and invalid. Further, defendant failed to show that the jury was not representative of a fair cross section of the community. Accordingly, defendant's third and fourth assignments are without merit.

*513 ASSIGNMENTS OF ERROR NOS. 5 AND 6
Defendant next contends the trial court erred in overruling challenges for cause on prospective jurors Ray Stagg and Lois Pollingue due to their stated opposition to black/white relationships. Defendant also asserts the trial court erred in overruling a challenge for cause on prospective juror Norris LeJeune based on his reluctance to accept the innocence of a defendant who does not testify on his own behalf. Defendant contends that to the extent a peremptory challenge had to be exercised to exclude each of them from the jury, it was prejudicial and reversible error not to grant additional peremptory challenges to the defense.
In State v. Allen, 380 So.2d 28 (La.1980), the court determined that a defendant need only show two things to obtain a reversal: (1) that the trial judge erred in refusing to sustain a challenge for cause by the defendant, and (2) that the defendant exhausted all of his peremptory challenges. In the instant situation, defendant has standing to complain of the trial judge's refusal to maintain his challenge for cause because the defense exhausted all 24 peremptory challenges allotted to them before completion of the jury panel. State v. Freeze, 438 So.2d 1340 (La.App. 3d Cir.1983), writ denied, 466 So.2d 465 (La.1985).
We have reviewed the voir dire transcript and conclude that the trial court successfully rehabilitated the three jurors mentioned in this appeal. Both Stagg and Pollingue stated that they could be fair, and LeJeune assured the trial court that he could follow the law. We find no abuse of discretion by the trial court in denying defendant's challenges for cause.

ASSIGNMENT OF ERROR NO. 8
In his eighth assignment of error, defendant alleges reversible error because the trial court excluded the responsive verdicts of simple rape and attempted simple rape from the jury verdict form and instructions pertaining to the charge of aggravated rape.
Aggravated rape includes the following responsive verdicts set out in La.C.Cr.P. Art. 814:
A. The only responsive verdicts which may be rendered when the indictment charges the following offenses are:
* * * * * *
8. Aggravated Rape:
Guilty.
Guilty of attempted aggravated rape.
Guilty of forcible rape.
Guilty of attempted forcible rape.
Guilty of sexual battery.
Guilty of simple rape.
Guilty of attempted simple rape.
Not guilty.
According to La.C.Cr.P. Art. 814 C, the court shall exclude a responsive verdict if, after all the evidence has been submitted, the evidence, viewed in a light most favorable to the State, is not sufficient reasonably to permit a finding of guilty of the responsive offense. In the instant case, the trial judge exercised the prerogative contained in Art. 814 C and excluded the responsive verdicts of simple rape and attempted simple rape, stating that they "might be responsive to the charge, but they are not responsive to the evidence."
We have reviewed the trial transcript and have considered all of the evidence presented. Finding no evidence which would reasonably support findings of guilty on the responsive verdicts of attempted simple rape and simple rape, we conclude the trial judge did not err in excluding these responsive verdicts from his instructions and from the verdict form.

ASSIGNMENT OF ERROR NO. 9
Defendant next raises the question of sufficiency of the evidence. When the issue of sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, *514 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is the role of the fact finder to weigh the respective credibility of the witnesses, and the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In the present case, defendant was convicted of forcible rape and simple kidnapping. Forcible rape is defined in La.R.S. 14:42.1, as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Defense counsel, although agreeing sexual intercourse occurred, argued at trial that it was both consensual and initiated by the victim. On the other hand, the victim testified that both defendants engaged in nonconsensual sexual acts taking place in a field, as well as during an extended car ride. The victim further testified that on several occasions she tried to escape, only to be apprehended once again. The record indicates that the victim was prevented from resisting the act by force or threats of physical violence, and under the circumstances her belief that resistance would not prevent the rape was justified.
Although defendant in brief to this court alleges his inability to sustain an erection precluded rape of any sort, under La.R.S. 14:41, which defines rape, penetration "however slight" has been adopted by this court in State v. Bertrand, 461 So.2d 1159 (La.App. 3d Cir.1984), writ denied, 464 So.2d 314 (La.1985), to mean that "any penetration, however slight, of the aperture of the female genitalia, even its external features, is sufficient." 461 So.2d at 1161.
Defendant also alleges there was insufficient evidence presented to warrant a conviction of simple kidnapping, defined in La.R.S. 14:45 as the "intentional and forcible seizing and carrying of any person from one place to another without his consent." The victim, testifying at trial, conceded that she voluntarily entered the car with the defendants for the purpose of going to the store to buy beer. However, she eventually became uncomfortable and asked them to bring her back to the festival and they refused.
The Louisiana Supreme Court in State v. Logan, 213 La. 451, 34 So.2d 921 (La.1948), was faced with a similar situation and found that a kidnapping occurred when the victim was forcibly detained in a truck even though she voluntarily entered the vehicle initially. In the present case, both defendants forcibly kept the victim from exiting the car. The victim testified she tried to exit the car at one point but was pulled back into the car with her left foot caught between the frame and the door. At another time, the victim tried to run away on foot but was chased down and returned to the car.
We conclude the evidence presented was sufficient to support the convictions of forcible rape and simple kidnapping.

ASSIGNMENTS OF ERROR NOS. 10, 11 AND 12
In these assignments of error, defendant contends the sentences imposed were both excessive and illegal, as the trial court failed to state for the record the facts and considerations taken into account in imposing sentence in accordance with La. C.Cr.P. Art. 894.1. While it is true the trial judge did not comply with the requirements of Art. 894.1, we conclude the circumstances of this case do not require a remand for resentencing.
In State v. Wimberly, 414 So.2d 666 (La.1982), the Supreme Court stated:
In those cases in which we have vacated the sentence and remanded the case for resentencing in full, recorded compliance with Article 894.1, our action was not *515 prompted simply by the sentencing judge's failure to give his reasons for the penalty imposed. Rather, it was because, based on the inadequate record presented to us, there appeared to be a substantial possibility that the defendant's complaints of an excessive sentence had merit. In each case, pursuant to our duty to uphold the constitution, which expressly prohibits the imposition by law of excessive punishment, we vacated the sentence and remanded the case for resentencing on an adequate record, including strict compliance with Article 894.1.
414 So.2d at 672. Further, in State v. Lanclos, 419 So.2d 475 (La.1982), the court held that a remand is unnecessary where the record reflects an adequate basis for the sentence imposed.
This court in State v. Frank, 549 So.2d 401 (La.App. 3d Cir.1989), held:
[I]f the record is adequate for this court to review any possible excessiveness in the sentence, the failure of the sentencing judge to consider mitigating factors should not be grounds for remand.
549 So.2d at 409.
According to this jurisprudence, the fact that the trial court did not articulate any factors in imposing the sentence is of no effect. The question is whether the record reflects an adequate basis for the sentence imposed.
The transcripts of defendant's sentencing hearing and the hearing on his motion to reconsider the sentence contain substantial testimony from defendant and his mother, as well as letters from the victim and her relatives, the pastor of defendant's church, and defendant's psychologist. Further, the trial transcript provides innumerable details of the crimes committed and the circumstances leading up to those crimes.
The defendant was convicted of two very serious crimes which caused the victim substantial emotional trauma. He testified on his own behalf at his sentencing hearing. While the defendant's past history indicates that he is usually a law abiding, church going individual, it is also true that he refused to acknowledge his responsibility for the crimes committed. There were no facts in the record tending to excuse or justify defendant's conduct, even though he urged the trial court at his sentencing hearing to find that he was induced and provoked to commit the crimes by both the victim and the codefendant.
In the present case, the defendant was sentenced on the rape charge to 21 years at hard labor, to run concurrently with a five year sentence on the kidnapping charge. On the two charges, the maximum term to which he could have been sentenced was 45 years plus a $5,000 fine. Additionally, we note that the codefendant, who was indisputably the more culpable of the two, was sentenced to concurrent terms of 25 years and five years, the first 15 of which are to be served without benefit of probation, parole or suspension of sentence. The trial judge implicitly acknowledged the defendant's lesser degree of culpability by giving him a more lenient sentence than that given to Todd Aubrey.
We have found in this case the record does support the sentence imposed and it is not excessive. The sentencing court is given wide discretion in the imposition of sentences within the statutory limits, and a sentence should not be set aside as excessive in the absence of a manifest abuse of the sentencing court's discretion.
In State v. Smith, 430 So.2d 31 (La.1983), the Supreme Court held that a trial court's failure to comply with Art. 894.1 does not, in and of itself, render a sentence invalid. A sentence will be upheld if the record clearly illumines the sentencing choice. We do not find the sentence imposed in the present case to be excessive, nor do we find it to be invalid under Art. 894.1, because the record before us does clearly illumine the sentencing choice made by the trial judge.

PATENT ERROR REVIEW
La.C.Cr.P. Art. 930.8 provides that at the time of sentencing the trial court shall inform the defendant of the prescriptive period for post conviction relief. The *516 record shows the trial court did not so inform the defendant. This error, however, is not grounds to reverse the sentence or remand the case for resentencing. La. C.Cr.P. Art. 921. Nonetheless, the trial court must inform the defendant of the prescriptive period before it begins to run, which is when the judgment becomes final.
Thus, we order the district court to inform the defendant of the provisions of La.C.Cr.P. Art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings. See State v. Colbert, 615 So.2d 32 (La.App. 3d Cir.1993).

DECREE
Notice of La.C.Cr.P. Art. 930.8 shall be given to the defendant in accordance with this opinion. In all other respects, and for the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED WITH INSTRUCTIONS.