643 So.2d 293 (1994)
STATE of Louisiana, Plaintiff-Appellee,
v.
Terry Lavon FORD, Defendant-Appellant.
No. 26,422-KA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 1994.
*295 Kurt J. Goins, Indigent Defender Office, Shreveport, for defendant-appellant.
Richard Ieyoub, Atty. Gen., Paul J. Carmouche, Dist. Atty., Tommy J. Johnson and Hugo A. Holland, Jr., Asst. Dist. Attys., Shreveport, for plaintiff-appellee.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
Terry Lavon Ford was charged by bill of information with armed robbery, La.R.S. 14:64. He proceeded to trial where a 12-member jury found him guilty of the lesser included offense of first degree robbery, La. R.S. 14:64.1. He was later adjudicated a second felony offender and sentenced to 20 years at hard labor, without benefit of probation, parole or suspension of sentence. Ford now appeals, urging the trial court erred in requiring him, at voir dire, to state race- and gender-neutral reasons for exercising his peremptory challenges, and that the evidence was insufficient to prove beyond a reasonable doubt that he was the perpetrator of the robbery. For the reasons expressed, we affirm.

Factual background
On the afternoon of September 22, 1992, carpet cleaner Eddie Hinton was on his way home from a job. He stopped at the Thrifty Liquor store on Linwood Avenue. He wanted to use the pay phone on the side of the building, but noticed that three black men were standing around the phone, one of them actually using it. He therefore went into the store, made a purchase, and put it in his car. The black men were still standing around the phone, but were apparently not using it. Hinton walked up and asked if they were through with it; they said yes. Hinton went to the phone and reached in his front shirt pocket for a quarter; his other money, about $55 in bills, showed when he fished out the quarter. Just as he placed his call, one of the men told him, "Give me all your money," and Hinton felt something poking him in his side. He looked and saw his assailant was holding a small pistol on him. The assailant added, "I am not playing." Hinton handed him the cash, getting a good look at the assailant's face. The assailant then ran across the street toward an auto parts store; the other two men walked off in a different direction.
Hinton hurried back inside Thrifty Liquor and told the manager, Paul Farnham, that he had just been robbed. In fact, Hinton pointed through the window (the entire storefront is made of glass) at the fleeing assailant. Farnham recognized him as a regular customer, one who had been in the store several times that day. Farnham did not, however, know the man's name.
When police arrived, Hinton described the assailant to Officer Gaspard as a black male about 5'11" tall, 180-200 lbs., heavy-set build, in his mid-20s, a light growth of whiskers, dark brown skin, and wearing a purple sleeveless muscle shirt and knee-length green short pants. Farnham described the *296 assailant as a black male about 6 feet tall, 200 lbs., hair on his chin, 25 years old, dark-complected, medium build, and wearing a purple tank top shirt. Officers could not locate the suspect, but Detective Muller advised Farnham to call the police if he saw him again. Officers dusted the pay phone for fingerprints but gathered no physical evidence from the scene.
Farnham did indeed see the suspect again, and phoned the police. An officer stopped the defendant for a "field interview" and got his name, Terry Lavon Ford. Detective Muller obtained a three-year-old photo of Ford and assembled a photographic lineup. Farnham, the store manager, immediately identified Ford as the suspect pointed out by Hinton at the scene, but commented that the suspect looked different from his photo. Farnham thought the suspect had gained weight since the photo, and was wearing his hair differently. Hinton could not pick a suspect from this lineup, and the police took no further action.
Several months later, in April 1993, Hinton was in City Court on an unrelated matter. There, he testified, he saw and immediately recognized "the guy that robbed me," and learned that his name was Terry Ford. After his business was done, Hinton immediately went to the Police Station and reported this to Detective Muller. Muller located a more recent (February 1993) mug shot of Ford, and assembled a second photo lineup. From this lineup, Hinton immediately and positively identified Ford as his assailant. Detective Muller later arrested Ford at his girlfriend's house. Both Hinton and Farnham identified Ford at trial as the assailant.
At trial Ford denied that he robbed Hinton, maintaining he had no recollection of the day in question.

Discussion: Gender-neutral peremptory challenges
By his first three assignments Ford urges the trial court erred in sustaining the state's objection, based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), to the defense's use of peremptory challenges, in requiring the defendant to give both race- and gender-neutral reasons for using peremptory challenges, and in denying the defendant's motion for new trial.
In the portion of the voir dire designated as appellate record, the prosecutor objected to defense counsel's use of peremptory challenges to exclude white male venire members from the jury. R.p. 105. Defense counsel argued that Georgia v. McCollum applied only to race, not to sex; and that the defense had accepted two white female jurors. The court found that the state's objection raised an equal protection problem and, implicitly finding that the State had made the prima facie showing of intentional discrimination, required the defense to provide race- and gender-neutral reasons for challenging three white males.[1] Counsel replied that as to venire member Mr. Dennington, "there was something in his demeanor * * * and he never looked at Mr. Ford, especially when I walked over to him." R.p. 108. Counsel said the same applied to the second venire member, Mr. Wilson. As for the third, Mr. Ferguson, "I did not notice that problem but it was more of a gut feeling, a discomfort." Id. The court denied the state's objection as to Dennington and Wilson, but sustained it as to Ferguson, finding the explanation not neutral. R.p. 109. The transcript suggests that Mr. Ferguson served on the jury, although the court minutes are unclear.[2] Counsel lodged a timely objection, and later moved for new trial on the basis that the court erred in requiring neutral reasons for excluding white male jurors. R.p. 94.
On appeal Ford correctly contends that under the rule of Batson v. Kentucky, supra, and Georgia v. McCollum, supra, a criminal defendant cannot exercise *297 peremptory challenges on the basis of race. He further argues that the Batson-McCollum rule applies only to race, not to gender, and in support cites State v. Adams, 533 So.2d 1060 (La.App. 4th Cir.1988), State v. Porter, 615 So.2d 507 (La.App. 3d Cir.1993), and La.C.Cr.P. art. 795 C. The article provides:
No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror.
The article is a legislative enactment of the holding from Batson v. Kentucky, supra, the seminal case condemning the state's racial discrimination in the exercise of peremptory challenges in a criminal trial. Although the rationale of Batson was that the defendant in a criminal case has standing to contest the state's actions in selecting a jury, the Supreme Court later held that the defendant has standing to raise the third-party equal protection claims of jurors who are excluded by the prosecution from jury service because of their race. Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). The court reasoned that a defendant was in a better financial and temporal position to mount a challenge than was a private citizen who had been excluded from jury service.
The Supreme Court then extended Batson to civil cases. In Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Court held that the Batson approach, requiring race-neutral explanations for peremptory challenges after the objecting party established a prima facie case of racial discrimination in the use of those challenges, also applied to civil cases.
The next elaboration was in Georgia v. McCollum, supra. There the Supreme Court held that a defendant's exercise of peremptory challenges is also "state action" for purposes of the equal protection clause, and that the state had standing to contest a defendant's racially discriminatory use of peremptory challenges. The Court said that if the state makes a prima facie case of racial discrimination by the defendant, then the latter must articulate a racially neutral explanation for the challenges. ___ U.S. at ___, 112 S.Ct. at 2359.
The latest jurisprudential development, and the one dispositive of this case, occurred in J.E.B. v. Alabama ex rel. T.B., ___ U.S. ___, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). There the Court reiterated the basic proposition that "whether a trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice." ___ U.S. at ___, 114 S.Ct. at 1421. The Court concluded that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." Id. Individual jurors, the Court explained, have a right to nondiscriminatory jury selection procedures, and this right extends to men and women. They should be protected from the presumption by state actors that they are, for no reason other than gender, unqualified to decide important questions upon which reasonable persons could disagree. Id., ___ U.S. at ___ _ ___, 114 S.Ct. at 1427-1428. The Court further stated:
As with race-based Batson claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. When an explanation is required, it need not rise to the level of a "for cause" challenge; rather, it merely must be based on a juror characteristic other than gender, and the proffered explanation may not be pretextual.
___ U.S. at ___ _ ___, 114 S.Ct. at 1429-1430 (citations omitted).
In the instant case the state showed that defense counsel had peremptorily challenged all six white males on the venire. Finding that this satisfied the requirement of a prima facie showing of racial and sexual discrimination, the trial court asked for neutral explanations as to three of the excluded venire *298 members. As to the third juror, defense counsel offered that it had a "gut feeling, a discomfort," and the court found this was not a neutral explanation.
In Batson, a concurring justice stated that "`seat-of-the-pants instincts' may often be just another term for racial prejudice." 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring). Federal courts have held that when the prosecutor states only that she has a "feeling" about the potential juror, this is not a legitimate explanation. United States v. Horsley, 864 F.2d 1543, 1546 (11th Cir.1989); United States v. Bentley-Smith, 2 F.3d 1368, 1380 (5th Cir.1993). An Alabama court has specifically held that the prosecutor's "gut feeling" about a venire member is not a neutral explanation. Ex parte Bird, 594 So.2d 676, 684 (Ala.1991). Given that defense counsel did not attempt to offer any clear and reasonably specific reason for challenging Mr. Ferguson, the trial court was not plainly wrong to reject this challenge under the principles of Batson and McCollum, supra. The trial court, after all, has great discretion in accepting or rejecting the explanation of the party who used the peremptory challenge. Batson, 476 U.S. at 98, 106 S.Ct. at 1724 (fn. 21); State v. Powell, 598 So.2d 454, 461 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992).[3]
We note that the opinion in J.E.B. was rendered in April 1994, after trial of the instant case but before appellate review was complete. In Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the Supreme Court held that Batson's rule would apply retroactively to all cases then pending on direct review and not yet final. This court has therefore applied Batson to a "pipeline" case. State v. Johnson, 621 So.2d 1167 (La.App.2d Cir.), writ denied 626 So.2d 1178 (1993). The same reasoning obviously applies to J.E.B.'s effect on the instant case.
These assignments do not present reversible error.

Sufficiency of evidence
By his fourth assignment Ford urges the trial court erred in denying his motion for post verdict judgment of acquittal. The substance of the motion was that the evidence does not reasonably permit a finding of guilt because (1) the victim gave a general description of the robber, (2) the description did not include a voice identification, and (3) the second lineup was initiated by a chance meeting "in which there is much room for error and unreliability." R.p. 54. Conceding that a robbery occurred, Ford argues the state failed to prove he was the perpetrator.
The standard of appellate review for sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App.2d Cir.), writ denied 605 So.2d 1089 (1992). The Jackson standard applies both to cases involving direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances must be sufficient for a trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Lott, 535 So.2d 963 (La.App.2d Cir.1988).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable possibility of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Chism, 591 So.2d 383 (La.App.2d Cir.1991). A witness's *299 failure to identify the suspect at a pretrial lineup is not grounds to bar an in-court identification; rather, it affects the weight of the testimony. State v. Long, 408 So.2d at 1225. Evidence may be introduced to explain any discrepancy. State v. Chism, 591 So.2d at 386.
Assessment of the credibility of witnesses is the trier of fact's function, in which judge or jury has great discretion. State v. Trosclair, 443 So.2d 1098 (La.1983); State v. Holland, 544 So.2d 461 (La.App.2d Cir.1989). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Braswell, 605 So.2d 702 (La.App.2d Cir. 1992), and citations therein; State v. Emerick, 499 So.2d 195 (La.App.2d Cir.1986).
First degree robbery is the taking of anything of value belonging to another from the person of another, by use of force or intimidation, when the offender leads the victim reasonably to believe he is armed with a dangerous weapon. La.R.S. 14:64.1. In State v. Meyers, 620 So.2d 1160 (La.1993), the Supreme Court held that the defendant's act of holding up what the victim reasonably believed was a gun constituted intimidation committed during a theft and supported a finding of guilty of first degree robbery.
The facts of the offense have already been described and are not seriously contested. Mr. Hinton, the victim, testified that his assailant robbed him of about $55 at gunpoint. This is sufficient to establish that the crime occurred. Although Hinton told every officer and testified at every court hearing that the assailant held a pistol to his ribs, no pistol was ever recovered; this is apparently why the jury settled for the lesser included offense of first degree robbery.
Mr. Farnham, the store manager, did not witness the actual robbery. However, Hinton reported it to him only seconds later, and pointed out the assailant. The jury, if it accepted the testimony of Hinton and Farnham, could reasonably find that Farnham saw the assailant running across the street. Farnham recognized the assailant by face, though not by name. Ford argues in brief that the descriptions given by both Hinton and Farnham were too general to be reliable. However, this is simply not so; both were as accurate as is normally obtained for suspects who lack distinctive facial or bodily characteristics.
After police conducted the "field interview," Farnham positively identified Ford in a photo lineup as the assailant. He commented, however, that since the photo was taken, Ford had gained weight and was wearing his hair differently. Hinton, who had seen Ford only once, could not connect the assailant to his obviously younger photo. However, this does not invalidate his later identification. State v. Long, supra.
In the second photo lineup, with a more recent picture of Ford, Hinton made a positive identification, as he did at trial. This testimony, if believed by the jury, was sufficient to negate the probability of misidentification. State v. Braswell, supra. In brief Ford argues that the victim's happenstantial identification in City Court, before the second lineup, was subject to error and unreliability. However, there is no showing that these conditions were present. He also does not argue that the second lineup was flawed or unduly suggestive.
Viewed in the light most favorable to the state, this evidence sufficiently negates any reasonable probability of misidentification and permits a finding of guilty. La.C.Cr.P. art. 821; Jackson v. Virginia, supra. This assignment does not present reversible error.

Conclusion
By his final assignment Ford asks the court to review the entire record for error patent. Such a review is made in all criminal cases. La.C.Cr.P. art. 920(2); State v. Stamper, 615 So.2d 1359 (La.App.2d Cir. 1993). When it imposed sentence the court informed Ford of the three-year period for seeking post conviction relief, but did not specify when that period begins. La.C.Cr.P. art. 930.8 A. This has no bearing on the sentence and is not grounds for remand. In addition, the court did not advise Ford that he was to receive credit for time served, in *300 accord with La.C.Cr.P. art. 880.[4] The trial court is instructed to send Ford written notice under arts. 930.8 A and 880 (if applicable), and to place in the record evidence that he received it. We have reviewed the entire record and find nothing else we consider to be error patent.
For the reasons expressed, Terry Lavon Ford's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The court also stated that a case was pending before the United States Supreme Court in which the gender-neutral question was posed. R.p. 107. The case was later decided as J.E.B. v. Alabama ex rel. T.B., infra.
[2] The list of jurors in the minutes contains only 11 names, and Mr. Ferguson is not among them; the minutes also recite that the jury was empaneled with "twelve (12) good and true persons." R.p. 2.
[3] We therefore find that the cases relied on by the defense, State v. Adams, 533 So.2d 1060 (La.App. 4th Cir.1988), and State v. Porter, 615 So.2d 507 (La.App. 3d Cir.1993) (dictum only), are overruled. Likewise are the similar cases of State v. Morgan, 553 So.2d 1012, 1018 (La.App. 4th Cir.1989), writ denied 558 So.2d 600 (1990), and State v. Collins, 588 So.2d 766, 789 (La.App. 4th Cir.1991).
[4] The court minutes recite that the judge gave Ford credit for time served. R.p. 3 (12/8/93). In case of discrepancy between the transcript and the minutes, the former should be accepted as correct. State v. Godejohn, 425 So.2d 750 (La. 1983).